<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 14a0076n.06

No. 13-5665

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Jan 28, 2014 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| JERMAINE S. PHILLIPS, | ) | STATES DISTRICT COURT FOR |
|  | ) | THE MIDDLE DISTRICT OF |
| Defendant-Appellant. | ) | TENNESSEE |
|  | ) |  |
|  | ) |  |

BEFORE:  MERRITT, BOGGS, and STRANCH, Circuit Judges.

PER CURIAM.  Jermaine S. Phillips, following his conditional guilty plea to access-device fraud, appeals the district court's denial of his motion to suppress.  We affirm.

On November 18, 2010, law enforcement stopped Phillips's vehicle in Carthage, Tennessee, and conducted a consensual search, finding approximately 148 credit/debit cards, 108 of which had been re-encoded, and a laptop computer, a forensic analysis of which revealed approximately 1,269 compromised credit/debit card account numbers.  A federal grand jury subsequently charged that Phillips conspired to knowingly and with intent to defraud use and possess unauthorized access devices in violation of 18 U.S.C. §§ 371 and 1029(a)(1), (3) (Count 1) and knowingly and with intent to defraud did possess fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) (Count 2).  Phillips moved to suppress the evidence obtained as a result of the traffic stop.  After an evidentiary hearing, the district court denied Phillips's motion.  Pursuant to a written plea agreement, Phillips pleaded guilty to the

possession count, preserving his right to appeal the denial of his motion to suppress. The district court sentenced Phillips to thirty months of imprisonment.

On appeal of a district court's decision regarding a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010). "Where a district court denies that motion, we consider the evidence in the light most favorable to the government." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (internal quotation marks omitted).

The only issue on appeal is whether law enforcement had reasonable suspicion to stop Phillips's vehicle. "An investigative stop of a vehicle is permissible under the Fourth Amendment where the stop is supported by reasonable suspicion of wrongdoing." *United States v. Flores*, 571 F.3d 541, 544 (6th Cir. 2009). In assessing reasonable suspicion, courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). Reasonable suspicion arises not only from the officer's "own direct observations," but also "from such sources as informant tips, dispatch information, and directions from other officers." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274 (internal citations and quotation marks omitted).

According to the evidence presented at the suppression hearing, Lieutenant Tommy Profitt answered a call from a citizen, Tony Bingham, who advised that he had been at a cigarette store on Highway 25 where "there's this white van out there with several colored people in it . . .

[a]nd they're going in and out of the store with several credit cards, and every one of them's coming up declined." (PageID# 349). Lieutenant Profitt then drove to Two Brothers Tobacco Discount Store in his patrol car. While waiting to turn into the parking lot, Lieutenant Profitt saw some individuals in conversation standing between two vehicles, a white van with Rhode Island plates and a maroon sedan with North Carolina plates, in front of the store. Lieutenant Profitt also saw Bingham, who pointed toward the vehicles. When Lieutenant Profitt pulled in front of the store, the subjects looked "straight at" him. (PageID# 249). The subjects then got in the two vehicles, some getting in the white van and some getting in the maroon sedan, and the two vehicles exited the parking lot. Lieutenant Profitt jumped out of his patrol car, went to the door of the tobacco store, and spoke briefly with the clerk, who confirmed Bingham's report that the subjects were attempting to buy tobacco products with multiple cards. Lieutenant Profitt returned to his patrol car and contacted dispatch to request assistance in stopping the two vehicles. Lieutenant Profitt stopped the white van; Sheriff Steve Hopper stopped the maroon sedan driven by Phillips.

For the sake of argument, Phillips assumes that Lieutenant Profitt had reasonable suspicion to stop the white van based on Bingham's report identifying a white van with Rhode Island plates. Phillips contends that the suspicious activity was expressly and exclusively tied to the white van – not the maroon sedan driven by him. We, however, do not view Bingham's report in isolation, but also consider Lieutenant Profitt's own observations. *See United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) ("In considering the totality of the circumstances, we must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion . . . ." (internal quotation marks omitted)). Lieutenant Profitt saw some individuals standing between two vehicles, one of which matched Bingham's description of a white van.

These individuals were conversing when Lieutenant Profitt pulled up. The subjects got in the two vehicles – some in the white van and some in the maroon sedan – and exited the parking lot when they saw Lieutenant Profitt pull up. In this context, their immediate departure could add to reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (recognizing "that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"). Contrary to Phillips's argument, Lieutenant Profitt expressly disavowed assuming that the subjects were together because of their common race. Rather, Lieutenant Profitt reasonably inferred that the subjects were together because they were standing and talking together and then left at the same time. Considering the totality of the circumstances, Lieutenant Profitt had a particularized and objective basis – more than a "gut feeling" – that the individuals in the maroon car were also involved in criminal wrongdoing, specifically, access-device fraud.

Accordingly, we affirm the district court's denial of Phillips's motion to suppress.